IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-01219-MEH

HILARIE NICKERSON,

     Plaintiff,

v.

ANDREW SAUL, Commissioner of Social Security,

     Defendant.

---

## ORDER

---

**Michael E. Hegarty, United States Magistrate Judge.**

Plaintiff Hilarie Nickerson began receiving spouse/survivor's benefits from the Social Security Administration ("SSA") in August 1992, following the death of her husband.   In 2010 she was informed that years earlier she had received more benefits than she was due based on her work and earnings.  This notice initiated a nearly decade-long interaction between the Plaintiff and the SSA that culminated in the matter presently before this Court.  Plaintiff requests review of the final decision of Defendant Andrew Saul (the "Commissioner") finding that she did not qualify for a waiver of the overpayment recovery of her spouse/survivor's benefits.  For the following reasons, the Commission's decision is reversed and remanded.

## BACKGROUND

### I.     Procedural History

Plaintiff seeks judicial review of the Commissioner's decision denying her request for a waiver of overpayment recovery filed on January 3, 2014.  [Administrative Record ("AR") 200; 209-10]  On July 30, 2014, Plaintiff met with a representative at an SSA office regarding her

request for a waiver.  [AR 186, 213]  On October 22, 2014, that representative determined Plaintiff was at fault for the overpayment and recovery would not defeat the purpose of the Social Security Act or be against equity and good conscience.  [AR 198-99]  On December 23, 2014, Plaintiff requested a hearing before an administrative law judge ("ALJ") [AR 185-194], which was held on July 27, 2016 [AR 299-327]  The ALJ issued a written ruling on September 12, 2016, concluding that Plaintiff had been overpaid within the meaning of the Social Security Act, recovery of the overpayment was not waived, and any penalty against Plaintiff regarding the overpayment was waived.  [AR 18-22]  Plaintiff appealed the decision [AR 23-48] and, on February 16, 2018, the SSA Appeals Council denied Plaintiff's administrative request for review of the ALJ's determination, making the Commissioner's denial final for the purpose of judicial review [AR 9-12].  *See* 20 C.F.R. § 416.1481.  After receiving two extensions of time within which to file a civil action [AR 2-3], Plaintiff timely filed her complaint with this Court seeking review of the Commissioner's final decision.

II.     **Communication Regarding Plaintiff's Overpayment**

        A.     Initial Correspondences Regarding Plaintiff's Overpayment

        On June 9, 2010, Plaintiff was sent a notification that she received an overpayment of $5165.00 in Social Security benefits based on her work and earnings in 2006.  [AR 294]  She was directed to refund the overpayment within thirty days and was provided directions for requesting a waiver of repayment and appealing the decision.  [AR 294-95]  The record indicates that Plaintiff was sent several notices and billing statements throughout 2010 and 2011 with conflicting information regarding the amount she was overpaid and when the overpayment occurred.  [*See* AR 113-14]  On October 4, 2010, Plaintiff was sent a notice in response to her request that the SSA review and provide an explanation of her overpayment.  [AR 287-90]

"[A]fter a full review," the SSA determined Plaintiff was overpaid a total of $5339.00 throughout various months in 1992, '93, and '95, and underpaid $1133.00 in 1994. [AR 287-88] Applying her underpayment as a credit, the SSA concluded the remaining balance on Plaintiff's overpayment was $4206.00. [AR 288] On March 6, 2011, the SSA sent Plaintiff a notice informing her she was paid $7,008.00 in benefits more than she was due. [AR 286] The SSA informed her that a worksheet explaining her overpayment was sent to an SSA office, which would contact Plaintiff to schedule an appointment to "go over" the document with her. [*Id.*] On June 9, 2011, Plaintiff was sent a billing statement for the amount of $2,802.00. [AR 282] Within a week, on June 15, 2011, Plaintiff was sent a notice informing her that the correct overpayment balance on her record was $7,887.00. [AR 280]

B.     Plaintiff's Requests for Reconsideration

On June 30, 2011, Plaintiff submitted a Request for Reconsideration appealing the determination that she had been overpaid by $7,887.00 and the request for repayment. [AR 274-75]. In an accompanying letter to the SSA, Plaintiff stated she had not received an explanation showing how the overpayment amount was calculated, did not understand why $7,887.00 was owed, and disagreed with the determination. [AR 275] The SSA sent Plaintiff a notice dated September 25, 2011, informing her that a worksheet explaining her overpayment was sent to her local SSA office, which would contact her to schedule an appointment to "go over" the document. [AR 273]

On July 6, 2012, Plaintiff went to the SSA office in Boulder, Colorado, because she had not been contacted by the office regarding her overpayment worksheet. [AR 249] The officer requested that a detailed earning statement be mailed to Plaintiff's address on file [*id.*], and one was mailed on August 10, 2012. [AR 250]

On September 17, 2012, the SSA sent Plaintiff a notice stating, in part:

> Our records show that you filed a Request for Reconsideration on your overpayment . . . on June 30, 2011. Our records also show that you have never been sent a determination on this request. We are resending your request to the program Center, requesting that they process it as soon as possible. No billing should be sent to you until you receive this decision.

[AR 272]  An internal agency communication dated October 11, 2012, stated that because Plaintiff requested reconsideration, having never received an explanation of the overpayment, the SSA considered it an explanation request rather than a reconsideration request. [AR 251]  The communication further noted that while a payment worksheet was sent out, no explanation notice was provided and a detailed explanation of the overpayment needed to be sent to Plaintiff. [*Id.*] In a notice dated October 31, 2012, Plaintiff was informed that her previous request for reconsideration was treated as a request for information, and she was directed to contact an SSA office within thirty days to pursue a request for reconsideration. [AR 261]  Attached to the notice was "another" payment worksheet showing a history of Plaintiff's benefits payments from 1991 through 2002, concluding that Plaintiff was overpaid by $7,887.00. [*Id.*]

On November 27, 2012, Plaintiff submitted a new Request for Reconsideration. [AR 259]  In the accompanying letter, Plaintiff identified four ongoing concerns related to her claim: (1) "1992 was designated as a grace year for [her]"; (2) she made a payment to the SSA of $606.00 on November 21, 1996 that, she believes, should have been applied to her claim; (3) bills she had been sent reflected differing amounts; and (4) she had continued to receive bills and notices to call the debt management center. [AR 260]

On June 30, 2013, the SSA sent Plaintiff an explanation of overpayment that addressed each of Plaintiff's four concerns and included an overpayment worksheet. [AR 227-31]  First, the SSA confirmed that 1992 was designed as a "grace year" for Plaintiff but, during grace years,

"benefits can be paid only for months when a worker earned less than the monthly exempt amount."  [AR 227]  The SSA's records showed Plaintiff earned $31,425.00 for 1992, when the monthly exempt amount was $620.00; it determined, therefore, that Plaintiff's monthly earnings were well above the exempt amount and she was not due benefits for any month in 1992.  [*Id*.] Plaintiff was directed to bring information to her local SSA office if she did not work or earned below the monthly exempt amount for a specific month in 1992.  [*Id*.]  Second, her payment of $606.00 was credited toward an overpayment for a child in Plaintiff's care at the time and was reflected on the payment worksheet as a credit.  [*Id*.]  Third, the SSA's records showed several billing notices were sent to Plaintiff between June and September 2012 for the amount of $4,206.00, which was an incorrect overpayment amount on Plaintiff's record prior to corrections to her payment worksheet.  [AR 227-28]  Fourth, the SSA apologized for any billing statements sent to Plaintiff after she submitted her request for reconsideration.  The notice concluded that the overpayment of $7,887.00 "stands correct" and found that because Plaintiff's Request for Reconsideration indicated she "did not really want a reconsideration but only wanted information," the SSA had not formally reconsidered the determination considering her overpayment.  [*Id*.]  She was directed to contact an SSA office within thirty days "if [she] really wanted a reconsideration."  [*Id*.]

On July 19, 2013, Plaintiff went to the SSA office in Boulder, Colorado, "extremely upset." [AR 222]  The Report of Contact form regarding this visit reiterates that Plaintiff was sent the explanation of overpayment dated June 30, 2013; acknowledges she informed the SSA in 1992 that her monthly earnings for August through December 1992 would drop below $620.00; and attaches a letter from SSA to Plaintiff on July 15, 1992 informing her she would be paid $822.00 on September 3, 1992 for August and monthly thereafter for the same amount.

[*Id.*; AR 223-24]  The Report of Contact concluded with: "Please review this case and apply non-service months for 8/1992-12/1992."  [AR 222]

      C.    <u>Plaintiff's Request for a Waiver of Overpayment Recovery</u>

On October 31, 2013, Plaintiff's benefits were adjusted [AR 232; 234-242], and in a letter dated November 5, 2013, she was informed she had been overpaid by $3,750.00.  [AR 210] In response to this letter, Plaintiff submitted another Request for Reconsideration form on January 3, 2014.  [AR 209]  Because she stated, "I am requesting a waiver because recovery would be unfair," the form was treated as an informal request for a waiver.  [*Id.*]  In the accompanying letter, Plaintiff stated she agreed that the amount she had been overpaid was $3,750.00, but requested the overpayment be waived because the overpayment was not her fault and recovery would be unfair.  [AR 210]  On January 3, 2014, Plaintiff submitted a Request for Waiver of Overpayment Recovery or Change in Repayment Rate form, again indicating that the overpayment was not her fault and it would be unfair to be required to pay it back.  [AR 200]

On July 30, 2014, Plaintiff had an in-person conference with Carrie Barreaux at the Boulder SSA office.  [AR 186; *see also* AR 213]  Plaintiff sent Ms. Barreaux a follow-up letter dated August 3, 2014, attaching a "correspondence history spreadsheet" listing written correspondences and meetings Plaintiff had with the SSA between 2001 and 2014.  [AR 213-18] On October 22, 2014, Ms. Barreaux prepared a determination on Plaintiff's request for a waiver, which concluded Plaintiff was at fault for the overpayment and recovery would not defeat the purpose of the statute or be against equity and good conscience.  [AR 198-99]  The SSA acknowledged that the original overpayment amount was billed at $7,887.00; however, this total had been reduced to $3,750.00 after review of Plaintiff's account.  [AR 199]  The overpayment was based on Plaintiff's work in 1996 and 2001.  [*Id.*]  As to fault, Ms. Barreaux noted that

Plaintiff did not notify the SSA about her work in 2001 until sometime in the summer of that year, after she had received benefits not due her for several months, and that Plaintiff knew she was being overpaid.  [AR 199] Citing "GN 02250.005"—which states, in part: "An individual is expected to exercise a high degree of care in preventing an overpayment. Any individual who . . . fail[s] to exercise a high degree of care in reporting circumstances which may affect entitlement . . . will be found at fault for the overpayment"—Ms. Barreaux determined Plaintiff did not exercise a high degree of care to prevent overpayment and, thus, "was not blameless in the creation of the overpayment."  [AR 199]  As to the equity of recovery, Ms. Barreaux relied on "GN 02250.150," which states that recovery is against equity and good conscience when "[a] beneficiary, relying on benefit payments . . . , relinquished a valuable right or changed his or her position for the worse," to conclude that because Plaintiff did neither, recovery would not be against equity and good conscience.  [*Id*.]

## III.    Plaintiff's Hearing before an ALJ

On December 23, 2014, Plaintiff responded to the October 22, 2014 determination as to her request for waiver of overpayment by requesting a hearing before an administrative law judge ("ALJ").  [AR 185-194]  That same day she received a billing statement for $3,719.94 [AR 184; 195-96], which she paid in full.  [AR 183-84; 176]  Plaintiff was sent two letters in 2015, one dated April 7, 2015 and the other September 8, 2015, informing her that she would be notified when her hearing was scheduled.  [AR 101-02]  Almost sixteen months after Plaintiff's request for a hearing, on April 19, 2016, she received a notice that her hearing was scheduled for May 9, 2016.  [AR 83]  After two postponements, Plaintiff's hearing was held on July 27, 2016. [AR 60; *see also* AR 70]

At her hearing, Plaintiff testified before an ALJ as to whether the overpayment amount in the records was correct and whether she was at fault in causing the overpayment at issue.  [AR 299-327]  Plaintiff stated that she was widowed and had not remarried; she was living alone; she had two master's degrees and was currently pursuing a doctorate; she started receiving benefits in 1991 after her husband passed away; she initially applied for benefits at the beginning of 2001 after not having any income for the previous six months; because she was working as a consultant, her income was variable; her income ended up exceeding her estimations and exceeding the amount that would have permitted payment of Social Security benefits for any month that year; she notified the SSA about her income on June 8, 2001; she relied on the overpayment during the beginning of 2001 while her income "was building," but she did not rely on the overpayment by the end of the year; in a year prior to 2001 she had an overpayment and learned the following year that overpayments had tax implications; because of her experience, she wanted to give the money back before the end of 2001; she visited an SSA office but was "turned away" by a representative because there was no overpayment on her record;  she was told to wait for the normal request that came in the early part of the following year; she visited the office a second time in an attempt to pay, but again was told to wait; the next time she was contacted regarding the overpayment was in 2009, when she received a letter requesting $7,887.00; she did not receive any notices about overpayment between 2001 and 2009; because she thought the amount overpaid was "in the $4,000 range," there was "back and forth" with the SSA during which she felt "Social Security really [did] not behav[e] well towards [her]"; things were "really, really, really messy and unpleasant"; the entire overpayment had been repaid; she provided her credit card information to her local SSA office at the end of December 2014;  when she did not see the charge come through by early January 2015, she called and provided her

credit card payment information by phone; after the phone payment "went through," in February 2015 her original payment also "went through"; she called to get the duplicate charge reversed; it was fourteen months before she was refunded the duplicate payment; while "it's all good" now, she was not happy about what happened; her credit report had been affected due to erroneous information; she believed she had shown that she was not at fault for the overpayment and that recovery would be unconscionable. [AR 299-327]

## ALJ's RULING

On September 12, 2016, the ALJ issued a decision concluding that Plaintiff had been overpaid within the meaning of the Social Security Act, recovery of the overpayment was not waived, and any penalty against Plaintiff regarding the overpayment was waived. [AR 18-22] The ALJ noted that at the July 27, 2016 hearing, Plaintiff conceded the existence of the overpayment and had already repaid it in full. [AR 18] She continued that Plaintiff contended the recovery of the overpayment was against good conscience and equity and sought a refund of the money she repaid and a waiver of any penalties. [*Id.*] The ALJ identified the issue before her as "whether [Plaintiff] qualifies for waiver of the overpayment as defined by Section 2014(b) of the Social Security Act," explaining that adjustment or recovery of the overpayment shall be waived if (1) the claimant is without fault and (2) adjustment of recovery would not defeat the purposes of the Act or would be against equity and good conscience. [*Id.*]

The ALJ first found Plaintiff was overpaid $3,750.00 during January 1996 and January through June 2001. [AR 20] Because Plaintiff had paid this amount in full, the ALJ found that Plaintiff had no remaining balance due but that there was "mention" of a remaining penalty of $888.00 in the record. [*Id.*] Second, the ALJ found Plaintiff was not at fault in causing the overpayment because these was no evidence showing Plaintiff knowingly or willfully caused the

overpayment.  [*Id.*]  She noted that Plaintiff testified about trying to repay the overpayment in 2001 and that most of the evidence and notices regarding the overpayment were not dated until after June 2010, long after the months and years during which the overpayment of benefits was made.  [*Id.*]  Third, the ALJ determined that recovery of the overpayment would not defeat the purpose of Title II of the Social Security Act because Plaintiff had already repaid the entire overpayment and presented no evidence that this resulted in any significant financial hardship. [AR 21]  Finally, the ALJ determined that recovery of the overpayment would not be against equity and good conscience.  She stated:

> The claimant has offered no documentation or substantive evidence supporting her argument that she previously tried to repay the overpayment but was refused by Social Security representatives.  She has also otherwise failed to present any evidence showing why it would be against equity and good conscience for her to repay the overpayment, particularly in that it has already been repaid.

[AR 21]  The ALJ concluded that Plaintiff should not be required to repay any additional penalties related to the overpayment and, therefore, she was not required to repay any additional amount.

## **LEGAL STANDARDS**

### I.    **Waiver of Social Security Benefits Overpayment Recovery**

Section 204(a)(1) of the Social Security Act provides that "[w]henever the Commissioner of Social Security finds that more or less than the correct amount of payment has been made to any person under this subchapter, proper adjustment or recovery shall be made under regulations prescribed by the Commissioner of Social Security" 42 U.S.C. § 404(a)(1).  Section 204(a)(1)(A) of the Act directs the Commissioner to "decrease any payment under this subchapter to which [an] overpaid person is entitled, or [to] require such overpaid person or his estate to refund the amount in excess of the correct amount."  *Id.*  Section 204(b) of the Act limits the recovery of an

overpayment by providing that "there shall be no . . . recovery by the United States from any person who is without fault if such recovery would defeat the purpose of this title or would be against equity and good conscience." 42 U.S.C. § 404(b); *see also* 20 C.F.R. § 404.506.

Social Security regulations explain that fault, as that term is used in "without fault," applies only to the individual.  20 C.F.R. § 404.507 ("Although the Administration may have been at fault in making the overpayment, that fact does not relieve the overpaid individual . . . for repayment if such individual is not without fault.").   An individual is at fault if the overpayment resulted from:

> (a) An incorrect statement made by the individual which he knew or should have known to be incorrect;
> (b) Failure to furnish information which he knew or should have known to be material; or
> (c) With respect to the overpaid individual only, acceptance of a payment which he either knew or could have been expected to know was incorrect.

*Id.*   An individual will be deemed without fault for an overpayment where that individual accepted the overpayment because of reliance on erroneous information from an official source within the SSA with respect to the interpretation of a pertinent provision of the Social Security Act or its pertinent regulations.  *Id*. at § 404.510a.   The SSA considers "all pertinent circumstances" in determining whether an individual is at fault.  *Id*. at § 404.507.   Regulations further explain that defeating the purpose of title II of the Social Security Act means depriving a person of income required for ordinary and necessary living expenses.   *Id*. at § 404.508. Recovery of an overpayment is against equity and good conscience if an individual changed his or her position for the worse or relinquished a valuable right because of reliance upon a notice that a payment would be made or because of the overpayment itself.   *Id*. at § 404.509(a).   An individual's financial circumstances are not material to a finding of "against equity and good conscience."   *Id*. at § 404.509(b).

## II.        Standard of Review

This Court's review is limited to whether the final decision is supported by substantial evidence in the record as a whole and whether the correct legal standards were applied.  *See Williamson v. Barnhart*, 350 F.3d 1097, 1098 (10th Cir. 2003); *see also White v. Barnhart*, 287 F.3d 903, 905 (10th Cir. 2001).  Thus, the function of the Court's review is "to determine whether the findings of fact . . . are based upon substantial evidence and inferences reasonably drawn therefrom.  If they are so supported, they are conclusive upon the reviewing court and may not be disturbed." *Trujillo v. Richardson*, 429 F.2d 1149, 1150 (10th Cir. 1970); *see also Bradley v. Califano*, 573 F.2d 28, 31 (10th Cir. 1978).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  However, [a] decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004) (citations omitted).  The Court may not re-weigh the evidence nor substitute its judgment for that of the ALJ.  *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (citing *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).  Reversal may be appropriate when the ALJ either applies an incorrect legal standard or fails to demonstrate reliance on the correct legal standards.  *Hamlin*, 365 F.3d at 1214 (citing *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996)).

## <u>ISSUES ON APPEAL</u>

On appeal, Plaintiff generally alleges the following errors: (1) the SSA violated her right to due process; and (2) the ALJ erred by failing to consider her concerns regarding due process generally and as related to whether recovery would be against equity and good conscience.  Plaintiff also alleges an abuse of discretion by the SSA Appeals Council in failing to consider the

alleged due process violation in its review of the ALJ's decision.  However, when, as here, the Appeals Council denies review, the ALJ's decision is the Commissioner's final decision for purposes of appeal.  *Martinez v. Barnhart*, 444 F.3d 1201, 1204 (10th Cir. 2006).  Although this Court can review alleged due process violations by the Appeals Council, *id.*, Plaintiff makes no such allegation here.  Therefore, the actions of the Appeals Council are not before this Court.

## ANALYSIS

The Court will address each of the Plaintiff's issues in turn.

### I.   Due Process

At the outset, for a district court to have jurisdiction to review procedural due process arguments in a Social Security appeal, there must be "a colorable constitutional claim."  *See Costello v. Barnhart*, 125 F. App'x 920, 921 (10th Cir. 2005) (quoting *Blair v. Apfel*, 229 F.3d 1294, 1295 (10th Cir. 2000)).  Absent specific circumstances, the Tenth Circuit has ruled on the sufficiency of procedural due process claims without much hesitation.  *See, e.g.*, *Allison v. Heckler*, 711 F.2d 145, 147–148 (10th Cir. 1983) (finding a due process violation where the ALJ considered a post-hearing report written by a doctor who the plaintiff was not able to cross-examine); *Mays v. Colvin*, 739 F.3d 569, 573 (10th Cir. 2014) (finding no due process violation where plaintiff failed to show prejudice).  Given the Tenth Circuit's rulings and that Defendant makes no jurisdictional argument against Plaintiff's due process contentions, the Court proceeds to the merits of Plaintiff's arguments.

Plaintiff first puts forth an extensive argument that in various ways and at various times during the process of collecting Plaintiff's overpayment, the SSA violated her due process rights.  Specifically, Plaintiff argues the SSA: (1) failed to follow its own regulations, policies, and processes around notification and credit reporting; (2) disregarded its responsibility to make

decisions based on a complete administrative record;[1] and (3) made an inexcusable number of errors.  Defendant responds that Plaintiff was provided adequate notice and a meaningful opportunity to be heard before the ALJ denied her request for waiver of the overpayment, and "[d]ue process requires nothing more."  Def.'s Resp. Br. 7.

Defendant is correct that "due process requires notice and a meaningful opportunity to be heard."  *Standard Indus., Inc. v. Aquila, Inc. (In re C.W. Mining Co.)*, 625 F.3d 1240, 1244 (10th Cir. 2010).  "To fulfill notice requirements, constitutional due process requires only that parties be informed in a [manner] reasonably calculated to apprise them of the pending action and provide[d] an opportunity to respond."  *Ingmire v. Astrue*, 359 F. App'x 38, 40 (10th Cir. 2009) (internal quotation omitted and alterations in original); *see also Kiiker v. Astrue*, 364 F. App'x 408, 411-12 (10th Cir. 2010).  Although SSA hearings are subject to procedural due process considerations, "[a] due process claim will not succeed . . . if the claimant fails to show prejudice."  *Mays v. Colvin*, 739 F.3d 569, 573 (10th Cir. 2014).  "Thus, when 'a party complains about the course of administrative proceedings, that party must demonstrate that the adjudication was infected by some prejudicial, fundamentally unfair element.'"  *Id*. (quoting *Energy W. Mining Co. v. Oliver*, 555 F.3d 1211, 1219 (10th Cir. 2009)).  With this in mind, the Court turns to Plaintiff's alleged due process violations.

A.    Agency's Compliance with Notification and Credit Reporting Regulations, Policies, and Procedures

Plaintiff contends that the SSA failed to comply with 20 C.F.R. § 404.502a (providing that an individual who has received an overpayment is to be "immediately" notified) because she was first billed eight years after the overpayment occurred.  Pl.'s Opening Br. 31-32.  She

---

[1] The Court considers Plaintiff's allegations regarding the completeness of the record in its discussion of whether the ALJ's decision is supported by substantial evidence.

continues that "[t]he instructions offered to SSA employees when notice was not sent [or] notice content is inadequate is to simply reissue the notice," which "should be unacceptable as a matter of policy." *Id.* at 32. Plaintiff also asserts that "the field office acknowledged [her] request for a hearing more than four months after receiving it, greatly exceeding the 30-day standard for response." *Id.*

In her Reply, Plaintiff acknowledges "that SSA eventually addressed [her] inquiries and provided the required meetings with SSA representatives," but contends, without more, that "the mere existence of these actions is not sufficient to meet due process requirements." Pl.'s Reply Br. 8. The Court disagrees that the SSA's failure to provide timely notice violated Plaintiff's due process rights, as she makes no argument or showing that such a delay caused prejudice to the ultimate adjudication of her rights concerning the waiver of her overpayment. *See Mays*, 739 F.3d at 573; *see also Glass v. Shalala*, 43 F.3d 1392, 1396-97 (10th Cir. 1994) (requiring a showing of prejudice for a due process claim involving social security proceedings). After being informed about the overpayment, Plaintiff was notified of and attended several in-person meetings and hearings at which she had the opportunity to respond to the SSA's adjudication of her overpayment waiver. While the Court does not condone the lengthy delay alleged here, such delay does not rise to a constitutional violation under prevailing law.

Plaintiff also contends that the SSA failed to comply with its credit reporting practices, providing a narrative timeline of notices and bills she received and agency reporting action taken. *See* Pl.'s Opening Br. 32-35. Defendant responds that Plaintiff fails to provide any evidence that she was prejudiced in any way. Def.'s Resp. Br. 6. Plaintiff cites to a one-page email from credit-reporting agency Experian which identifies a "derogatory trade" associated with Plaintiff for which the SSA was the creditor. *See* Plaintiff's Supplemental Record 45, ECF

23-2. She directs the Court to a post from an internet blog maintained by Experian about "charge-offs" and an individual's credit scores. However, the SSA's credit reporting of Plaintiff's overpayment did not affect the sufficiency of Plaintiff's notice of, or her ability to be heard on, the SSA's ultimate determination regarding her overpayment waiver. Plaintiff mentioned her concerns with credit reporting at her hearing with the ALJ; however, the ALJ noted, "[t]hat is not something that we . . . make any sort of judgment on." [AR 306, 323] As the credit reporting did not affect the sufficiency of the SSA's ultimate adjudication on Plaintiff's overpayment, it does not provide a basis for Plaintiff's claim that the SSA violated her due process rights in this case.

> B.      "Inexcusable Number of Errors"

Plaintiff argues that the SSA made an "inexcusable" number of errors, including refusing to accept her initial attempts to repay her overpayment, failing to update her address or continuing to send notices to former addresses, sending incomplete explanations of her overpayment, and charging her twice when collecting the repayment. *See* Pl.'s Opening Br. 37-41. While the Court acknowledges the lengthy and, apparently, stressful process Plaintiff experienced in this case, none of the alleged errors serves as a basis for a due process claim.

Constitutional due process requires only that a party be informed in a manner reasonably calculated to apprise him or her of the pending action and provided an opportunity to respond. *Ingmire*, 359 F. App'x at 40. While the errors identified by Plaintiff apparently subjected her to prolonged inconvenience, none of them ultimately prejudiced her opportunity to be informed of and respond to the agency's intent to recover her overpayment before the agency made a final determination on the matter. "Regrettably, delay is a natural concomitant of our administrative

bureaucracy." *Isaacs v. Bowen*, 865 F.2d 468, 477 (2d Cir. 1989). The Court concludes that Plaintiff has failed to demonstrate that the SSA violated her due process rights.

## II.    Overpayment Recovery

Section 204(b) of the Social Security Act provides that "in any case in which more than the correct amount of payment has been made, there shall be no adjustment of payments to, or recovery by the United States from, any person who is without fault if such adjustment or recovery would defeat the purpose of this subchapter or would be against equity and good conscience." 42 U.S.C. § 404(b)(1). In this case, the ALJ found that while Plaintiff was without fault, recovery of the overpayment would not defeat the purpose of Title II of the Social Security Act and would not be against equity and good conscience. [AR 20-21] Plaintiff concedes that whether recovery would defeat the purpose of the Act is inapplicable in this case, Pl.'s Opening Br. 44; thus, the Court considers only whether the ALJ applied the correct legal standards, and whether the ALJ's conclusion that recovery would not be against equity and good conscience is supported by substantial evidence. Because the Court finds that the ALJ failed to apply the correct legal standards, and her decision is not supported by substantial evidence, her decision must be reversed and remanded. *See Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

### A.    Correct Legal Standards

The ALJ failed to apply the correct legal standards when she neither discussed Plaintiff's misinformation allegations during the hearing, nor addressed them in the written decision. Social Security regulations explain that "[w]here an individual . . . accepts such overpayment because of reliance on erroneous information from an official source within the Social Security Administration . . ., such individual, in accepting such overpayment, will be deemed to be

without fault."  20 C.F.R. § 404.510a. Adjustment or recovery "will be waived" in the situation described in section 404.510a "since it will be deemed such adjustment or recovery is against equity and good conscience." 20 C.F.R. § 404.512(a); *see also Tefera v. Colvin*, 61 F. Supp. 3d 207, 216 (D. Mass. 2014) ("[A] no fault finding under § 404.510a would have automatically entitled [the plaintiff] to waiver.").

The ALJ, in finding Plaintiff was "not at fault in causing the overpayment," cites to sections 404.506(a) (providing the general rule that "no adjustment or recovery in any case where an overpayment under title II has been made to an individual who is without fault if adjustment or recovery would either defeat the purpose of title II of the Act, or be against equity and good conscience") and 404.507 (defining "fault").  [AR 20]  Importantly, the ALJ also cites section 404.510a in finding Plaintiff was not at fault.  [AR 20]  To the extent the ALJ made a finding that Plaintiff was "without fault" under section 404.510a, which it appears she did, section 404.512(a) *requires* recovery to be waived.  In that case, the ALJ should not have proceeded to determine whether recovery or adjustment would "defeat the purpose of Title II of the Act" or "not be against equity and good conscience."

Notably, the ALJ's recitation of the "Applicable Law" [AR 19-20] does not mention section 404.510a and, otherwise, the ALJ's decision is silent concerning whether Plaintiff relied on erroneous information from an official source.  *See Setian v. Apfel*, 110 F. Supp. 2d 24, 27-28 (D. Mass. 2000)) (noting that "because 'Social Security proceedings are inquisitorial rather than adversarial[,] ... [i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against' [recoupment]" (quoting *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000)); *see also Martinez v. Astrue*, No. 11-cv-00654-WYD, 2012 WL 1045230, at *7 (D. Colo. Mar. 28, 2012) ("[T]he ALJ should have considered plaintiff's claim that she was misinformed and developed

18

the record in an effort to illuminate the details of her claim.").  With that said, the ALJ's citation

to section 404.510a, which describes *specific* circumstances under which a claimant is not at

fault, leads to a reasonable conclusion that the ALJ's citation was not inadvertent.  Due to the

confusion between the ALJ's citation to section 404.510a and her lack of discussion concerning

the application of this regulation, the Court must remand the matter for clarification of the ALJ's

precise basis for her finding that Plaintiff was "not at fault" to determine whether it was proper

for the ALJ to proceed to an analysis of whether recovery would be against equity and good

conscience.

      If, in fact, the citation of section 404.510a was careless and not intentional, in which case

the ALJ properly considered whether recovery would be against equity and good conscience, the

ALJ found it would not be, because Plaintiff "offered no documentation or substantive evidence

supporting her argument that she previously tried to repay the overpayment but was refused by

Social Security representatives" and "otherwise failed to present any evidence showing why it

would be against equity and good conscience for her to repay the overpayment, particularly in

that it has already been repaid."  [AR 21]  The ALJ also relied on the fact that Plaintiff

"presented no evidence showing that [repaying the overpayment] caused a financial hardship."

[*Id.*]  However, "[an] individual's financial circumstances are not material to a finding of against

equity and good conscience." 20 C.F.R. § 404.509(b).  Rather, the standard for determining

whether repayment would be against equity and good conscience requires the ALJ to examine

whether Plaintiff "[c]hanged . . . her position for the worse . . . or relinquished a valuable right . .

. because of the overpayment itself."  *Id.* § 404.509(a)(1).  Although the ALJ noted this standard

in the "Applicable Law" section of her written decision, she failed to mention it, let alone apply

it, to any facts in the record when explaining her finding that recovery in this case was not against equity and good conscience.

      B.    <u>Substantial Evidence</u>

To the extent that the ALJ did not actually rely on section 404.510a and properly proceeded to consider whether recovery would be against equity and good conscience, the ALJ not only applied the wrong standard but also failed to consider applicable written and testimonial evidence.

As noted, in explaining her finding that recovery of the overpayment would not be against equity and good conscience, the ALJ found the Plaintiff presented no evidence showing that repayment caused a financial hardship. [AR 21]  In so finding, the ALJ disregarded Plaintiff's sworn testimony to the contrary.  During her hearing before the ALJ, Plaintiff stated that "when Social Security came back in 2009 and ask for [repayment], yes, I was concerned." [AR 319]  She explained that her employment had ended in March 2009 due to a reduction in force, and she had just begun graduate school when the SSA contacted her.  [AR 320]  In addition to her lack of employment and attending graduate school, she "also had an unsold house and was paying still the mortgage on that house at that time."  [Id.]   The ALJ failed to mention Plaintiff's testimony and thus failed to explain why she was affording the testimony little or no weight in her decision.  An ALJ may not pick and choose portions of the evidence favorable to her position while ignoring other evidence.  *See Keyes–Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012).

The ALJ's explanation also stated that Plaintiff "has offered no documentation or substantive evidence supporting her argument that she previously tried to repay the overpayment but was refused by Social Security representatives."  [AR 21]  However, Plaintiff gave sworn

testimony that twice she attempted to repay the overpayment.  [AR 308-09]  The record also

contains a letter from Plaintiff to the SSA requesting a waiver of overpayment recovery dated

January 1, 2014.  [AR 210]  In the letter, Plaintiff states that in 2001,

> I visited my local Social Security office with the intent of repaying what I owed
> before the end of the year. . . At that time I was told a) that you had no mechanism
> to accept payment until your computer system showed I owed money and b) that I
> would be notified later on of the amount I owed by letter.
> When no such letter arrived during the first months of 2002, I contacted you again
> and was given similar information. . . .
> Overall, hearing nothing from you about this matter for several years led me to
> the interim conclusion that I must not have been overpaid after all.

[*Id.*]  Plaintiff also reported these repayment attempts at an in-person conference with Ms.

Barreaux on July 30, 2014.  [See AR 309; 199]  Ms. Barreaux referenced these attempts in the

October 22, 2014 initial determination on Plaintiff's waiver request, noting Plaintiff alleged she

attempted to repay the overpayment in 2001 and early 2002 but both times was told that the SSA

could not accept payment because there was no overpayment on record.  [AR 199]  The ALJ

disregards these notations of Plaintiff's 2001/2002 repayment attempts.  She provides no

explanation for disregarding the various pieces of evidence or why she did not find Plaintiff's

testimony on the repayment attempts credible.

Finally, the Court also notes that in the context of her due process argument, Plaintiff

contends that the SSA failed to include all material evidence in the factual record.  She alleges

there were several "typical" notices and bills sent from the SSA, as well as specific documents

that are referenced in the administrative record but not themselves included in the record.  *See*

Pl.'s Opening Brief 35-36.  She further contends that the list of exhibits included in the "Non-

Disability Summary Sheet" the Agency prepared for the ALJ hearing [AR 115-117] lists two

exhibits that do not appear in the record at all.  Pl.'s Opening Br. 36.  Given the Court's

determination that reversal and remand are warranted in this case, the ALJ is encouraged to

review the record for these potentially missing documents (with Plaintiff's assistance, if needed) and reminded to fully develop the record as it relates to the relevant issues on remand. *See Ware v. Barnhart*, 123 F App'x 335, 338-39 (10th Cir. 2005) ("'[U]nlike the typical judicial proceeding, a social security disability hearing is nonadversarial, with the ALJ responsible in every case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised.'" (quoting *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997))).

## <u>CONCLUSION</u>

In sum, the Court concludes that the ALJ cited but apparently did not apply section 404.510a.  On remand, the ALJ should state plainly whether this section applies; if it does, it appears that is the end of the matter.  If section 404.510a does not apply, the ALJ should explain why; thoroughly address the law that does apply; and then determine whether repayment would be against equity and good conscience by referring to and applying the correct law and addressing relevant evidence in the record in light of such law.

Therefore, the decision of the ALJ that recovery of the overpayment would not be against equity and good conscience and that Plaintiff Hilarie Nickerson is not entitled to a waiver of her overpayment recovery is REVERSED AND REMANDED to the Commissioner for further consideration in accordance with this order.

SO ORDERED.

Dated this 9th day of June, 2020, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge